In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 25-1553

THOMAS T.D. POLK, individually and as Special Administrator of the Estate of KATARZYNA KUREK-POLK, deceased,

*Plaintiff-Appellant,*

*v.*

PROGRESSIVE NORTHERN INSURANCE COMPANY and SECURA SUPREME INSURANCE COMPANY,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
24 C 00935 — **Charles P. Kocoras**, *Judge.*

_____

ARGUED NOVEMBER 4, 2025 — DECIDED APRIL 2, 2026

_____

Before EASTERBROOK, KIRSCH, and KOLAR, *Circuit Judges*.

KIRSCH, *Circuit Judge*. This insurance-coverage dispute arises from a tragic car accident. While assisting another motorist on the side of the road, Thomas T.D. Polk and his wife, Katarzyna Kurek-Polk, were struck by an oncoming vehicle. Thomas was injured and Katarzyna was killed. Thomas and

Katarzyna's estate received $100,000 from the responsible tortfeasor.

Thomas submitted claims under three underinsured motorist (UIM) policies that he and his wife carried at the time of the accident: a $1,000,000 policy with AMCO Insurance Company; a $500,000 policy with Progressive Northern Insurance Company; and a $500,000 policy with Secura Supreme Insurance Company. All three policies contain a proportionate liability provision that says the insurer's liability is the pro rata share of all UIM coverage. The parties agree that the pro rata shares are as follows: 50% AMCO; 25% Secura; and 25% Progressive. Each policy also has an "Other Insurance" anti-stacking provision which limits liability to the highest limit of liability under any one policy. Here, that amount is $1,000,000 under the AMCO policy. In addition to the $100,000 from the tortfeasor, Thomas and Katarzyna's estate received $800,000 from a settlement with AMCO and were offered $220,000 in UIM benefits from Secura, which they rejected. Progressive did not make or offer any payments under its policy.

Subsequently, Thomas—both in his individual capacity and on behalf of Katarzyna's estate (collectively, Polk)—sued Progressive and Secura, alleging breach of contract. Secura, Progressive, and Polk all moved for summary judgment. The district court granted summary judgment in favor of the insurance companies and denied Polk's cross-motion. The district court concluded that the Progressive and Secura policies provide per accident, as opposed to per person, coverage and that the anti-stacking language in the policies limited Polk's recovery to the highest UIM coverage available under any one policy—in this case, $1,000,000 under the AMCO policy. It was undisputed that Polk had already received $100,000 from

the at-fault driver and $800,000 from the AMCO settlement. Because Secura had offered to settle Polk's claims, the district court ordered it to pay Polk $100,000 (to bring the total recovery to $1,000,000) and reasoned that Progressive was not obligated to provide any coverage under its policy. Polk appealed.

We apply de novo review to a district court's ruling on cross-motions for summary judgment. *Cent. States, Se. and Sw. Areas Pension Fund v. Univar Sols. USA Inc.*, 148 F.4th 426, 429 (7th Cir. 2025). Because we need only consider defendants' motions against Polk, we construe the facts in the light most favorable to Polk and take all reasonable inferences in Polk's favor. *Gills v. Hamilton*, 164 F.4th 640, 644 (7th Cir. 2026). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The interpretation of an insurance policy is a matter of state law. *Rahimzadeh v. Ace Am. Ins. Co.*, 142 F.4th 972, 976 (7th Cir. 2025). The parties agree that Illinois law governs their dispute. Because "[a]n insurance policy is a contract," Illinois courts apply "the rules applicable to contract interpretation to" insurance policies. *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). Doing so, Illinois courts "construe an insurance policy in its entirety and give effect to each provision where possible." *Kuhn v. Owners Ins. Co.*, 241 N.E.3d 397, 407 (Ill. 2024). Illinois courts enforce clear and unambiguous insurance policies as written, unless enforcement violates public policy. *Thounsavath*, 104 N.E.3d at 1244. Insurance policies are ambiguous when they are "susceptible to more than one reasonable interpretation." *Kuhn*, 241 N.E.3d at 403 (citation modified).

On appeal, Polk first argues that he can stack the UIM coverage limits, despite clear anti-stacking provisions in the policies. Polk suggests (incorrectly) that the maximum available UIM coverage is $2,000,000 across all three policies. Then—based on the proportionate liability provisions and the tortfeasor's $100,000 payment—Polk concludes that he is entitled to $475,000 under the Progressive policy and $470,000 under the Secura policy (presumably offset by a $5,000 medical payment that Secura made to Katarzyna's estate). However, the Secura and Progressive policies contain clear anti-stacking provisions that limit the insurers' obligations to the highest UIM coverage available under any one policy. Indeed, the Progressive policy provides: "If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest limit of liability under any one policy." Similarly, the Secura policy provides: "Any recovery for damages under this policy or any other policy issued by us may equal but not exceed the highest applicable limits for any one vehicle under this or any other insurance providing coverage on either a primary or excess basis." The highest limit of liability here is $1,000,000 under the AMCO policy. Combining the anti-stacking language with the proportionate liability provisions in both policies, the maximum Polk could receive is $250,000 from Progressive and $250,000 from Secura for the single accident, notwithstanding the fact that both Thomas and Katarzyna were involved.

Polk asserts that the anti-stacking language in the Progressive and Secura policies is ambiguous since it fails to distinguish between per accident and per insured limits. But the clauses in the Secura and Progressive policies are unambiguous—they broadly bar stacking—and Illinois courts have

found similar provisions to be unambiguous. See, e.g., *Menke v. Country Mut. Ins. Co.*, 401 N.E.2d 539, 541–42 (Ill. 1980); *Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 359 (Ill. 1993); *Willison v. Econ. Fire & Cas. Co.*, 690 N.E.2d 1073, 1074–77 (Ill. App. Ct. 1998). The Illinois Insurance Code expressly authorizing anti-stacking provisions provides:

> Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of the multiple motor vehicles covered under the same policy of insurance.

215 Ill. Comp. Stat. 5/143a-2(5). Polk understands the statute's use of a singular "insured" to mean that insurers are permitted to limit a singular insured's ability to stack per accident UIM benefits but must allow the stacking of per accident UIM benefits when more than one insured is injured in a single accident. We disagree. That the statute referred to a singular "insured" person does not mean that Illinois authorizes stacking when more than one insured person is involved in an accident. And Polk has failed to identify any case that interprets the statute in the manner he proposes.

Second, Polk argues the district court erred in concluding that Progressive's and Secura's obligations could be offset by AMCO's $800,000 settlement. But as we've already shown, both policies explicitly authorize set-off by limiting liability to

the maximum amount recoverable under any one policy issued by any insurer: here, $1,000,000 under the AMCO policy. Requiring Progressive and Secura to pay their proportionate share (each 25% of the $1,000,000 limit, or $250,000) would allow Polk to recoup more than the maximum limit of liability. See *Grzeszczak v. Ill. Farmers Ins. Co.*, 659 N.E.2d 952, 959 (Ill. 1995) ("[T]he purpose of underinsured-motorist coverage is to fill the gap between the amount of the tortfeasor's insurance and the amount of underinsured-motorist coverage the insured opted to buy."). Polk contends that because Secura's anti-stacking provision limits recovery only under policies issued by Secura, it doesn't require offsetting Secura's UIM coverage with that provided by other insurance companies. That the policy only limits recovery under Secura's policies doesn't help Polk, however, because the policy limits recovery to the highest limits "under this or any other insurance." That means Secura is entitled to offset its coverage based on payments from other insurers.

Polk complains that the policies conflict with the premium rule of construction, which "prevents insurance companies from collecting premiums for a given amount of coverage and then applying limiting clauses to reduce its liability." *Id.* at 958. But "the payment of multiple premiums is of no consequence where the intent of the parties to the insurance contract was manifested in the clear and unambiguous language of an antistacking provision," *id.*, and as we've discussed, both the Progressive and Secura policies contain clear anti-stacking language preventing insureds from combining multiple UIM policies to increase coverage.

One additional matter warrants our attention. As mentioned above, the district court ordered Secura to pay the

entire $100,000 owed to Polk because it offered to settle for $220,000, despite Polk rejecting the settlement offer. Secura now complains about that apportionment. But Secura did not file a cross-appeal, so this issue has not been properly presented for our review. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969–70 (7th Cir. 2016).

AFFIRMED